**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK ANDREW HIESTERMAN, an individual, | No. 54171-8-II |
| Appellant/Cross-Respondent, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF HEALTH, | ORDER GRANTING MOTION TO PUBLISH |
| Respondents/Cross-Appellants. | |

Respondent, Department of Health, moved this court to publish its December 13, 2022 opinion. After consideration, we grant the motion. it is now

ORDERED that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

ORDERED that the opinion will now be published.

Panel: Jj. Cruser, Veljacic, Worswick.

FOR THE COURT:

_____
Veljacic, J.

Filed
Washington State
Court of Appeals
Division Two

December 13, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK ANDREW HIESTERMAN, an individual, | No. 54171-8-II |
| Appellant/Cross-Respondent, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF HEALTH, | UNPUBLISHED OPINION |
| Respondents/Cross-Appellants. | |

VELJACIC, J. — Mark A. Hiesterman was arrested twice for driving under the influence (DUI). He was reported to the Board of Osteopathic Medicine and Surgery (Board), which received two complaints. He was also reported to the Board by the Washington Physicians Health Program (WPHP) after he voluntarily sought program assistance and then refused to comply with its recommendation. The Board conducted an investigation and issued charges. Eventually it suspended Hiesterman's license to practice medicine. As required by statute, the Board reported his charges and later suspension to the public via a news release. It incorrectly stated that he had been convicted of DUI. Hiesterman sued the Department of Health (DOH), arguing he was owed damages due to its error in reporting he was convicted of DUI. DOH moved for summary judgment dismissal, arguing it was immune from suit under RCW 18.130.300(1). The trial court granted DOH's motion.

Hiesterman appeals, arguing that RCW 18.130.300(1) violates the Washington Constitution. He also argues that *Janaszak v. State*, 173 Wn. App. 703, 297 P.3d 723 (2013),

54171-8-II

which interpreted RCW 18.130.300(1) and expanded its immunity to DOH, was incorrectly decided. He also argues that RCW 18.130.300(1) does not protect administrative acts like DOH's reporting in this case. We decline to consider Hiesterman's constitutional challenges under RAP 2.5(a)(3) because he failed to preserve this argument for appeal and the alleged constitutional errors are not manifest. We also conclude that the plain language of RCW 18.130.300(1) provides immunity to the Board and those performing the reporting function on its behalf. We affirm the trial court's summary judgment order.

FACTS

Hiesterman practices osteopathic medicine and is licensed to practice in Washington. Hiesterman was arrested twice for DUI, once in Michigan and once in Idaho. For the Michigan charge, he pleaded guilty to driving while intoxicated. For the Idaho charge, he pleaded guilty in exchange for a withheld judgment. The Idaho charge was eventually dismissed.

Hiesterman self-referred to the Washington Physicians Health Program (WPHP), an organization that assists doctors who present with a condition that may affect their ability to practice. After a consultation, WPHP directed Hiesterman to undergo a "comprehensive evaluation at a WPHP-approved facility." Clerk's Papers (CP) at 61. He chose the Betty Ford Center's clinical diagnostic evaluation. The Betty Ford team concluded that Hiesterman required 90 days of residential chemical dependency treatment. Hiesterman refused to follow the recommendation, and WPHP gave him the opportunity to have an additional evaluation conducted. He never sought an additional evaluation.

Around the time Hiesterman received his Betty Ford evaluation and recommendation, the Board received two complaints about Hiesterman. One complaint pertained to his arrest for DUI in Idaho. Meanwhile, WPHP informed Hiesterman that he was required to undergo treatment or

3

54171-8-II

seek an additional evaluation, and that if he failed to comply, WPHP would contact the Board. WPHP contacted the Board after Hiesterman failed to either seek treatment or reevaluation.

The Board conducted an investigation and issued a statement of allegations. The Board later sent Hiesterman a statement of charges. Pursuant to RCW 18.130.110(2)(c),[1] the Board issued a news release, that included the inaccurate sentence: "Hiesterman was convicted of driving while intoxicated in 2006 in Michigan and in 2013 in Idaho." CP at 144.

Following a hearing, the Board suspended Hiesterman's license. The Board issued another news release informing the public that Hiesterman's license was suspended. Eventually, the Board reinstated Hiesterman's license and removed all conditions. It issued a news release informing the public of the reinstatement.

Hiesterman sued the DOH in tort for damages because it reported he had been convicted of driving while intoxicated in Idaho.[2] DOH moved for summary judgment, arguing it was immune from suit under RCW 18.130.300(1).

Hiesterman never challenged the constitutionality of RCW 18.130.300(1) or the constitutionality of the *Janaszak* holding in the trial court. The trial court granted DOH's motion for summary judgment. Hiesterman appeals.

## ANALYSIS

I.      THE DEPARTMENT OF HEALTH'S DISCIPLINARY PROCESS

In passing the Uniform Disciplinary Act (UDA), the legislature intended to standardize the licensing and disciplinary procedures for health care professions. RCW 18.130.010. The UDA

---

[1] RCW 18.130.110(2)(c) requires the Board to report to the public via a news release any time it issues a statement of charges or a final order.

[2] Hiesterman asserted claims of negligence, defamation, tortious interference with business expectancy, and invasion of privacy.

4

established boards to oversee the licensure and discipline of such professions, including the Board relevant here. RCW 18.57.003. The Board oversees the licensure and discipline of osteopathic medical professions pursuant to the UDA. RCW 18.57.005(1); RCW 18.57.011. The Board does not have its own staff and instead relies on DOH to provide staff.

The Board, as a disciplining authority, receives complaints made against medical professionals and determines whether such complaints merit investigation. RCW 18.130.080(1)(a), (2). DOH must report the issuance of charges or a final order to the public via a press release sent to local news media and major news wire services. RCW 18.130.110(2)(c). After a hearing and a finding that a professional has acted unprofessionally, the Board may discipline the professional through revocation or suspension of their license. RCW 18.130.160.

The UDA also includes an immunity provision that states in relevant part, "The secretary, members of the boards or commissions, or individuals acting on their behalf are immune from suit in any action, civil or criminal, based on any disciplinary proceedings or other official acts performed in the course of their duties." RCW 18.130.300(1).

II.     CONSTITUTIONALITY OF RCW 18.130.300

Hiesterman argues that RCW 18.130.300(1) is facially unconstitutional because it provides absolute immunity, which is barred by article I, section 8 of the Washington Constitution. DOH first argues that Hiesterman failed to preserve his constitutional claims. Alternatively, it argues that RCW 18.130.300(1) is constitutional. We decline to address Hiesterman's facial challenge to RCW 18.130.300(1) because he failed to preserve his constitutional claims and the claimed error is not a manifest error affecting a constitutional right.

We consider only the issues and evidence the parties called to the trial court's attention on the motion for summary judgment. RAP 9.12. But we will consider an issue raised for the first

5

time on appeal if the claimed error is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 427, 333 P.3d 534 (2014). An error is manifest if it results in actual prejudice to the defendant or the defendant makes a "'plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case.'" *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). "The court previews the merits of the claimed constitutional error to determine whether the argument is likely to succeed." *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

*Lynn* sets out a four-step approach to determining whether an error claimed for the first time on appeal amounts to a manifest constitutional error requiring review:

> First, the reviewing court must make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. Third, if the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then, and only then, the court undertakes a harmless error analysis.

67 Wn. App. at 345.

First, Hiesterman's claim that RCW 18.130.300 violates article I, section 8 of the Washington Constitution clearly suggests a constitutional issue. Second, the alleged error is manifest because the immunity provided by RCW 18.130.300 is a core issue resulting in judgment for DOH here. But Hiesterman stumbles on the third step because a consideration of the merits of the constitutional issue does not result in relief to Hiesterman. That is because Hiesterman must "by argument and research, convince the court that there is no reasonable doubt that the statute violates the constitution." *Island County. v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998). Instead, Hiesterman asserts in conclusory fashion that RCW 18.130.300 grants irrevocable

6

immunity, which denies plaintiffs recourse, which in turn "'runs contrary to the most fundamental precepts of our legal system.'" Br. of Appellant at 8 (quoting *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 105, 829 P.2d 746 (1992)). This argument fails to show that there is no reasonable doubt that the statute violates the constitution.

Hiesterman fails in the *Lynn* four-step approach, and therefore, fails to show that the alleged constitutional error was manifest. RAP 2.5(a). Accordingly, we decline to consider Hiesterman's constitutional challenge to RCW 18.130.300(1).

III.    HIESTERMAN'S *JANASZAK* CHALLENGE

Hiesterman also argues for the first time on appeal that *Janaszak* violates article II, section 26 of the Washington Constitution. But we consider only the issues and evidence the parties called to the trial court's attention on the motion for summary judgment. RAP 9.12. However, as stated above, we will consider an issue raised for the first time on appeal if the claimed error is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Vernon*, 183 Wn. App. at 427. Also as set out above, we review Hiesterman's argument under the four-step approach set forth in *Lynn*. We conclude that as to the first step, his argument suggests a constitutional issue because it alleges a conflict with a state constitutional provision, article II, section 26. Second, if *Janaszak*, and its application of liability to DOH in that case, is prohibited by article II, section 26, then it would have a practical and identifiable consequence to Hiesterman's case below. But as to the third factor, again, Hiesterman would not be entitled to relief. That is because we agree with *Janaszak* and its reasoning.

Hiesterman argues that the *Janaszak* court violated article II, section 26 of the Washington Constitution and ignored RCW 4.92.090 because it granted immunities to the State and its departments when interpreting RCW 18.130.300. He next argues that the *Janaszak* decision

7

conflicts with *Savage v. State*, 127 Wn.2d 434, 899 P.2d 1270 (1995). We conclude that *Janaszak* was correctly decided.

When examining whether to extend the immunity protections of a given statute, courts must conduct a "detailed policy-oriented factual inquiry." *Lutheran Day Care*, 119 Wn.2d at 100. Relying on conclusory holdings alone "carries with it the risk of finding immunity based on analogy to a case where the title held by the relevant official is the same as the one at issue, but the functions, procedures, and inherent protections available are quite different." *Id*. at 100-01. The *Janaszak* court specifically examined RCW 18.130.300(1) and its grant of statutory absolute immunity. 173 Wn. App. at 713-14. The court concluded that the statute "grants absolute immunity for acts performed in the course of a covered individual's duties." *Id*. at 714. It also considered whether the statute granted immunity to the state and DOH. *Id*. at 717-18.

The court examined the statutory scheme of the UDA, which covers the investigation and regulation of the practice of medicine. *Id*. at 718. It concluded that when it passed the UDA, including RCW 18.130.300(1), the legislature intended to provide absolute immunity "for the secretary of health, members of the commissions, and individuals acting on their behalf for official acts performed by any of these individuals in the course of their duties under the act." *Id*. Because the investigative and enforcement duties of such roles mirrored prosecutorial and judicial roles, the court determined it should examine cases addressing the extension of prosecutorial and judicial immunity. *Id*.

Its examination revealed that the policy protecting prosecutors and judicial staff was not intended solely to protect individuals (though it certainly has that effect), but rather to protect "'the public and to insure active and independent action of the officers charged with the prosecution of crime, for the protection of life and property.'" *Id*. (internal quotation marks omitted) (quoting

8

54171-8-II

*Creelman v. Svenning*, 67 Wn.2d 882, 884, 410 P.2d 606 (1966)).  The court explained that the Washington Supreme Court has stated that such immunity should be extended to the state and the "entity employing the prosecutor."  *Janaszak*, 173 Wn. App. at 719.  The court concluded that the same policy considerations applied to RCW 18.130.300(1) because that statute was also not intended to protect individuals but to protect the integrity of the disciplinary process.  *Id*. at 719.  The court held that the absolute immunity in RCW 18.130.300(1) applied to the state and DOH. *Id*.

We agree with the *Janaszak* decision and adopt its reasoning here.

Hiesterman asserts that *Janaszak* violated the Washington Constitution because only the legislature may grant immunity under article II, section 26.[3]  However, he relies on *Savage* which contradicts his position because it provides that courts may extend immunity upon the appropriate policy examinations.  *See* 127 Wn.2d 440-41.  *Janaszak* is consistent with *Savage*.

Hiesterman also argues the policy of protecting the disciplinary process under RCW 18.130.300(1) does not warrant extending immunity to the state or DOH.  But the *Janaszak* court spent considerable time analyzing the policy reasons that *do* warrant extending the immunity of RCW 18.130.300(1) to DOH and the state.  173 Wn. App. at 718-19.

Hiesterman's assertion that *Janaszak* is contrary to article II, section 26 of the Washington Constitution, RCW 4.92.090, and the Supreme Court's *Savage* decision fails.  Accordingly, step three of the *Lynn* four-step approach is unmet and the alleged constitutional error is not manifest. Because it is not manifest, we do not review the issue per RAP 2.5(a)(3).

---

[3] WASH. CONST. art. II, § 26 states: "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state."

9

54171-8-II

IV.     ADMINISTRATIVE VERSUS QUASI-JUDICIAL ACTIONS UNDER RCW 18.130.300(1)

Hiesterman argues "DOH's reporting at the conclusion of the disciplinary proceedings is an administrative act outside the immunity provided by RCW 18.130.300." Br. of Appellant at 12. Further, he argues that because RCW 18.130.300(1) provides immunity for quasi-judicial action, it should not be applied to DOH's reporting action here because such action was administrative. DOH argues that by its plain language RCW 18.130.300(1) applies to the reporting at issue here. We agree with DOH.

A.      Legal Principles

The primary goal of statutory construction is to determine and give effect to the legislature's intent. *SEIU Healthcare 775NW v. Dep't of Soc. & Health Servs.*, 193 Wn. App. 377, 398, 377 P.3d 214 (2016). To decipher legislative intent, we examine the plain language of the statute, the context of the statute in which the provision is found, and related statutes. *Id*. at 398. "'[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" *Green v. Pierce County*, 197 Wn.2d 841, 850, 487 P.3d 499 (2021) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2022)).

RCW 18.130.300(1) states, "The secretary, members of the boards or commissions, or individuals acting on their behalf are immune from suit in any action, civil or criminal, based on any disciplinary proceedings or other official acts performed in the course of their duties."

B.      Analysis

RCW 18.130.300(1) is unambiguous. It applies to the reporting action required of DOH. Hiesterman spends most of his brief discussing why RCW 18.130.300(1) should not apply to DOH's action here based on the distinction between administrative and quasi-judicial actions, in

54171-8-II

that the reporting of his DUI history was an administrative action, rather than a quasi-judicial function. He does so at the expense of any interpretation of RCW 18.130.300(1) itself. We hold that DOH's fulfillment of its reporting duty is conduct protected by statutory immunity under RCW 18.130.300(1).

Hiesterman's reliance on the administrative policy underlying DOH's actions in this case is misplaced because RCW 18.130.300(1) makes no distinction between the investigative and administrative work of DOH staff. Hiesterman directs our attention to a purpose of the statutory immunity as discussed in the *Janaszak* opinion, he misreads the point of the *Janaszak* court. Hiesterman asserts that the immunity in RCW 18.130.300(1), is not intended to protect the individual, but instead to protect only the decision making process, and that immunity therefore should not extend to those performing acts that are non-quasi-judicial, such as reporting.

While it is true that an underlying policy is to protect the decision making process, we will not read the policy to nullify the plain unambiguous language of the statute, which grants immunity to "[t]he secretary, members of the boards or commissions, or individuals acting on their behalf . . . based on any disciplinary proceedings or other official acts performed in the course of their duties." RCW 18.130.300(1). And since notification via press release is an official act performed in the course of their duties, those performing those non-quasi-judicial acts on behalf of the Board are also protected by the statutory immunity.

The immunity under RCW 18.130.300(1) includes the reporting mandate of RCW 18.130.110(2)(c). We affirm the trial court's summary judgment order.[4]

---

[4] DOH conditionally cross-appeals, arguing that Hiesterman's affidavit includes inadmissible evidence that should be stricken. DOH concedes that we should only review this argument if it reverses the trial court's summary judgment order. Because we affirm the trial court's summary judgment order, we do not consider DOH's conditional cross-appeal.

11

54171-8-II

CONCLUSION

We decline to consider Hiesterman's constitutional challenges under RAP 2.5(a)(3) because the alleged constitutional errors are not manifest. We also conclude that the plain language of RCW 18.130.300(1) provides immunity to the Board and those performing the reporting function on its behalf. We affirm the trial court's summary judgment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Worswick, J.P.T.

_____
Cruser, A.C.J.

12