# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOSEPH ERIC JANASZAK DDS,
a single person,

           Appellant,

      v.

THE STATE OF WASHINGTON; THE
WASHINGTON STATE DEPARTMENT
OF HEALTH, an agent of the State
of Washington; MARY SELECKY,
Secretary, Department of Health,
in her official capacity; THE HEALTH
PROFESSIONS QUALITY
ASSURANCE COMMISSION, an
agent of the State of Washington and
the Washington State Department of
Health; and the WASHINGTON STATE
DENTAL QUALITY ASSURANCE
COMMISSION, an agent of the State
of Washington and the Washington
State Department of Health; JOHN
DAVIS DDS, member, Washington
State Department of Health, Dental
Quality Assurance Commission, in
his individual and official capacities;
KIRBY PUTSCHER, Deputy Executive
Director, Department of Health Dental
Quality Assurance Commission, in her
official and individual capacities;
LORIN PETERSON DDS, member,
Department of Health, Dental Quality
Assurance Commission, in his official
and individual capacities; PRAMOD
SINHA DDS, member, Department of
Health, Dental Quality Assurance
Commission, in his official and
individual capacities; ROBERT FAINE

NO. 67749-7-I

DIVISION ONE

ORDER GRANTING MOTION
TO PUBLISH OPINION

NO. 67749-7-I / 2

DDS, member, Department of Health, )
Dental Quality Assurance Commission, )
in his official and individual capacities; )
JANE AND JOHN DOE, members of )
the Department of Health, Dental )
Quality Assurance Commission, in )
their official and individual capacities; )
CHYMA MILLER SMITH, Investigator, )
Department of Health, in her official )
and in her individual capacity, )
                                   )
                Respondents. )
_____)

The respondent, State of Washington, having filed a motion to publish

opinion, and the appellant, Joseph Janaszak, having filed an answer to the

motion, and a majority of the hearing panel having reconsidered its prior

determination and finding that the opinion will be of precedential value; now,

therefore it is hereby:

ORDERED that the unpublished opinion filed January 7, 2013, shall be

published and printed in the Washington Appellate Reports.

Done this _____ day of _____, 2013.

                               FOR THE COURT:

                               _____
                                         Judge

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

-2-

| | | |
|---|---|---|
| JOSEPH ERIC JANASZAK DDS, | ) | NO. 67749-7-I |
| a single person, | ) | |
| | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| THE STATE OF WASHINGTON; THE | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF HEALTH, an agent of the State | ) | |
| of Washington; MARY SELECKY, | ) | FILED: January 7, 2013 |
| Secretary, Department of Health, | ) | |
| in her official capacity; THE HEALTH | ) | |
| PROFESSIONS QUALITY | ) | |
| ASSURANCE COMMISSION, an | ) | |
| agent of the State of Washington and | ) | |
| the Washington State Department of | ) | |
| Health; and the WASHINGTON STATE | ) | |
| DENTAL QUALITY ASSURANCE | ) | |
| COMMISSION, an agent of the State | ) | |
| of Washington and the Washington | ) | |
| State Department of Health; JOHN | ) | |
| DAVIS DDS, member, Washington | ) | |
| State Department of Health, Dental | ) | |
| Quality Assurance Commission, in | ) | |
| his individual and official capacities; | ) | |
| KIRBY PUTSCHER, Deputy Executive | ) | |
| Director, Department of Health Dental | ) | |
| Quality Assurance Commission, in her | ) | |
| official and individual capacities; | ) | |
| LORIN PETERSON DDS, member, | ) | |
| Department of Health, Dental Quality | ) | |
| Assurance Commission, in his official | ) | |
| and individual capacities; PRAMOD | ) | |
| SINHA DDS, member, Department of | ) | |
| Health, Dental Quality Assurance | ) | |
| Commission, in his official and | ) | |
| individual capacities; ROBERT FAINE | ) | |
| DDS, member, Department of Health, | ) | |
| Dental Quality Assurance Commission, | ) | |
| in his official and individual capacities; | ) | |
| JANE AND JOHN DOE, members of | ) | |

-3-

NO. 67749-7-I / 4

the Department of Health, Dental )
Quality Assurance Commission, in )
their official and individual capacities; )
CHYMA MILLER SMITH, Investigator, )
Department of Health, in her official )
and in her individual capacity, )
)
              Respondents. )
_____)

LEACH, C.J. — Dr. Eric Janaszak appeals the trial court's summary dismissal of his lawsuit against the State of Washington, the Washington Department of Health, and other state officials and employees. His complaint alleged negligent and intentional misconduct relating to the investigation and temporary summary restriction of his dental license. Because the respondents have immunity, either absolute or qualified, against many of Janaszak's claims and he cannot establish the necessary elements of his remaining claims, we affirm.

FACTS

In early 2006, two female patients filed complaints with the Department of Health, accusing Dr. Eric Janaszak of professional misconduct. They alleged that he pursued sexual relationships with them while they were his patients, initiated sexual encounters with them during scheduled appointments, billed them for dental services not actually performed during those appointments, and sent one patient's account to collections when she refused to pay.

-4-

After the Washington Dental Quality Assurance Commission (Commission) authorized an investigation, Washington Department of Health (Department) investigator Chyma Miller-Smith conducted one. Over the next eight months, Miller-Smith interviewed the complainants, as well as Dr. Janaszak, his office manager, his dental assistant, and other potential witnesses. In September 2006, Miller-Smith submitted a report to the Department. She did not make any disciplinary recommendation to the Commission and played no role in the Commission's disciplinary decision-making process.

After reviewing Miller-Smith's report, the Department filed an ex parte motion with the Commission, seeking an order prohibiting Janaszak from treating adult female patients pending further disciplinary proceedings. The Commission instead prohibited Janaszak from treating female patients aged 12 and older. It published notice of the disciplinary action on the Department's web site. Soon afterward, the Commission assigned Miller-Smith to investigate a third complaint made against Janaszak by a former employee who also alleged sexual misconduct. Meanwhile, after being deposed, the original two complainants stopped cooperating with the disciplinary proceedings. The Commission withdrew the summary practice restrictions and charges against Janaszak.

Janaszak sued the State of Washington, the Department, the Secretary of Health, the Health Professions Quality Assurance Commission, and the

Commission. He also sued five members of the Commission and Miller-Smith, each in their personal and professional capacities.[1] He asserted federal and state constitutional claims, a state statutory violation, and multiple common law claims. The trial court granted the State's motion for summary judgment and dismissed all claims. Janaszak appeals.

## STANDARD OF REVIEW

This court reviews summary judgment orders de novo, engaging in the same inquiry as the trial court.[2] Summary judgment is proper if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists if reasonable minds could differ regarding the facts controlling the outcome of the litigation.[4]

A defendant moving for summary judgment may meet his burden by showing an absence of evidence to support the nonmoving party's case.[5] If the defendant makes this initial showing, the inquiry shifts to the party with the

---

[1] Collectively, this opinion refers to respondents as the State. Where an issue relates only to a single party, it refers to that party by name or title.

[2] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003).

[3] CR 56(c); Michak, 148 Wn.2d at 794-95.

[4] Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779, review denied, 171 Wn.2d 1024, 257 P.3d 662 (2011).

[5] Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991).

burden of proof at trial, the plaintiff.[6]  If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, the trial court should grant the motion for summary judgment.[7]

ANALYSIS

Janaszak asserted claims under 42 U.S.C. § 1983 for alleged violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  He also asserted claims based upon alleged violations of article I, sections 3, 5, and 7 of the Washington Constitution and RCW 18.130.080.  Finally, he asserted common law claims for defamation/false light, intentional interference with a business expectancy, negligent investigation, negligence, outrage, and negligent infliction of emotional distress.  The respondents claim immunity against many of these claims and the absence of any evidence to support at least one essential element of each other claim.  We agree.

This case presents several issues about the State's immunity from lawsuits.  Immunity is not merely a defense to liability, but "an 'entitlement not to stand trial or face the other burdens of litigation.'"[8] Because the respondents rely

_____

[6] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).
[7] Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 66, 837 P.2d 618 (1992) (quoting Young, 112 Wn.2d at 225).
[8] Feis v. King County Sheriff's Dep't, 165 Wn. App. 525, 538, 267 P.3d 1022 (2011) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)), review denied, 173 Wn.2d 1036, 277 P.3d 669 (2012).

-7-

upon both the common law and statutes to support their immunity claims, we begin with a brief overview of the guiding laws and principles.

The Scope of Sovereign Immunity in Washington

"At common law, the State was immune from lawsuit."[9] The Washington State Constitution requires that the legislature determine when and where the State may be sued.[10] In 1963, our legislature largely waived the State's immunity from tort claims. RCW 4.92.090 provides, "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.96.010 makes similar provisions for suit against municipalities and other subdivisions of the state.[11]

While the courts construe this legislative waiver of sovereign immunity broadly,[12] common law immunities, both absolute and qualified, still exist. Absolute immunity protects an entity completely against suit, while qualified

---

[9] Linville v. State, 137 Wn. App. 201, 208, 151 P.3d 1073 (2007).

[10] WASH. CONST. art. II, § 26 ("The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state.").

[11] The legislature has created numerous exceptions providing statutory immunity for a variety of government actors and actions. See, e.g., RCW 10.99.070 (immunizing peace officers for arrests or other actions arising from domestic violence incidents); RCW 71.05.120 (exempting officials from liability in decisions relating to the treatment and care of mentally ill patients); RCW 86.12.037 (providing immunity for city and county officials working to improve or control flood prevention measures).

[12] Evangelical United Brethren Church of Adna v. State, 67 Wn.2d 246, 252, 407 P.2d 440 (1965).

immunity can be lost if it is abused.[13]  Courts generally confine absolute privilege to those circumstances where public service and the administration of justice require complete immunity.[14]

Courts look to the function being performed, instead of the person who performed it, to determine if immunity applies.[15]  The application of judicial immunity illustrates this approach.  At common law, judges have absolute immunity for acts performed within their judicial capacity.[16]  This immunity does not exist for the benefit of the judge; rather, it protects the administration of justice by ensuring that judges can decide cases without fear of personal lawsuits.[17]  Thus, the immunity only applies when a judge acts in a judicial capacity with color of jurisdiction.[18]

Respondents Are Immune from Janaszak's Claims under the Uniform Disciplinary Act

Janaszak contends that the State failed to comply with mandatory procedures for disciplinary investigations conducted under RCW 18.130.080. This statute is part of the Uniform Disciplinary Act (UDA), chapter 18.130 RCW, which provides standardized procedures for the enforcement of laws for licensed

[13] Bender v. City of Seattle, 99 Wn.2d 582, 600, 664 P.2d 492 (1983); see also Lallas v. Skagit County, 167 Wn.2d 861, 864-65, 225 P.3d 910 (2009).
[14] Bender, 99 Wn.2d at 600.
[15] Lallas, 167 Wn.2d at 865.
[16] Lallas, 167 Wn.2d at 864.
[17] Taggart v. State, 118 Wn.2d 195, 203, 822 P.2d 243 (1992).
[18] Lallas, 167 Wn.2d at 865.

health and health-related professionals.[19] The respondents assert statutory and common law quasi-judicial immunity against this claim. We agree that the respondents have statutory immunity.

The UDA includes a grant of statutory immunity for officials carrying out their duties under the act. RCW 18.130.300(1) provides, "The secretary, members of the boards or commissions, or individuals acting on their behalf are immune from suit in any action, civil or criminal, based on any disciplinary proceedings or other official acts performed in the course of their duties." On its face, this statute grants absolute immunity for acts performed in the course of a covered individual's duties. Additionally, RCW 18.32.0357 addresses the duties and powers of the Dental Quality Assurance Commission and states that "[t]he members of the commission are immune from suit in an action, civil or criminal, based upon its disciplinary proceedings or other official acts performed in good faith as members of the commission." This statute grants a qualified immunity.

Janaszak argues that statutory immunity does not bar his claim because Miller-Smith acted outside the scope of her official duties and did not follow Department procedures in conducting her investigation and because the Commission and its members did not act in good faith. We disagree.

---

[19] RCW 18.130.010.

Janaszak asserts that RCW 18.130.300 does not immunize respondents because Miller-Smith exceeded the scope of her duties when she investigated him without the Commission's prior approval. The record on appeal does not support this assertion. Miller-Smith received the Commission's authorization to investigate the first complaint, and her investigation quickly revealed a second potential victim. He argues that Miller-Smith showed bias and bad faith by speaking with this second patient before the Commission had authorized an investigation of her complaint. These two women were involved in intimate relationships with the same man at the same time, and Miller-Smith was investigating the propriety of one of those relationships. Thus, Miller-Smith could interview the second complainant as part of her investigation of the first complaint. For the same reasons, she could interview the third complaining witness as part of her investigation of the first complaint. Her interviews did not exceed the scope of her duties.

Janaszak next complains that Miller-Smith colluded with the complainants to falsely accuse him of misconduct. He points to the fact that Miller-Smith did not require the complainants to produce their phone records and that she corresponded with them by e-mail to keep them updated on the status of the case. He also complains about the role Miller-Smith played in drafting the patients' complaints. Further, he claims that Miller-Smith forced a third

complainant to file a complaint. Although the record contains one e-mail from Miller-Smith's colleague, questioning whether the third woman had agreed to file her own complaint or simply offered to be a witness in the ongoing investigations, the record contains no evidence that directly or by reasonable inference supports Janaszak's claim.

While Janaszak may disapprove of how Miller-Smith conducted her investigation, he presents no genuine issue that her actions exceeded the scope of her duties as an investigator for the Department of Health. RCW 18.130.300 bars Janaszak's claims for violation of the UDA.

RCW 18.32.0357 provides Commission members with additional immunity. Janaszak asserts RCW 18.32.0357 does not immunize the Commission or its members because they did not act in good faith. He contends that the Commission's failure to restrict his dental license immediately upon receiving a complaint provides evidence of its bad faith. Again, we disagree.

"'The standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose.'"[20] A plaintiff alleging that a defendant has lost qualified immunity by acting in bad faith fails to raise a genuine issue of material fact by showing only that the defendant acted negligently.[21] Where reasonable

---

[20] Deschamps v. Mason County Sheriff's Office, 123 Wn. App. 551, 559, 96 P.3d 413 (2004) (quoting Whaley v. State, 90 Wn. App. 658, 669, 956 P.2d 1100 (1998)).

[21] Deschamps, 123 Wn. App. at 559.

minds could not differ on the issue of good faith, this question of fact may be resolved on summary judgment.[22]

WAC 246-10-301 describes when the Commission may summarily restrict dental practitioners:

> Summary action may be taken only after a review by the secretary or designee of such evidence, including affidavits, if appropriate, to establish:
> (a) The existence of an immediate danger to the public health, safety, or welfare;
> (b) The department's ability to address the danger through a summary action; and
> (c) The summary action necessary to address the danger.

Here, the Commission waited until it had a complete report before taking action to limit Janaszak's license to practice dentistry. Once the fruits of Miller-Smith's investigation provided the Department with evidence—as opposed to accusations—that Janaszak posed an immediate danger to his patients, it responded accordingly and, acting through the assistant attorney general, filed an ex parte motion to restrict his access to female patients.

To determine the existence of any genuine issue of fact about the Commission's immunity, we ask if the record includes any evidence showing the absence of a state of mind indicating honesty and lawfulness of purpose. It does not. Janaszak argues that the delay, but not the factual basis for the restriction,

---

[22] Marthaller v. King County Hosp. Dist. No. 2, 94 Wn. App. 911, 916, 973 P.2d 1098 (1999) (citing Dutton v. Wash. Physicians Health Program, 87 Wn. App. 614, 622, 943 P.2d 298 (1997)).

evidences the Commission's bad faith.  A mere delay in taking what Janaszak concedes by implication was reasonable if done promptly provides no evidence of dishonesty or unlawfulness of purpose.

Janaszak also contends that the Commission acted arbitrarily by imposing a harsher restriction than the attorney general requested because the Department provided no evidence that Janaszak had sex with any patients under the age of 18.  This is irrelevant.  The Commission found that Janaszak had a pattern of engaging in sexual relationships with female patients and that he showed poor boundaries with those patients.  Under the circumstances, the Commission's restriction of Janaszak from treating any female patients over 12 years of age also provides no evidence of dishonesty or unlawfulness of purpose.

Because Miller-Smith acted within the scope of her duties under the UDA, RCW 18.130.300 protects respondents from Janaszak's claims based upon violations of the UDA.  Because the Commission's members acted in good faith in the conduct of their statutory duties, RCW 18.32.0357 provides them immunity as well.

Janaszak argues that even if the individual actors are entitled to immunity, because neither RCW 18.130.300 nor RCW 18.32.0357 expressly grants immunity to the State or the Department, both should still be liable.  He claims

that our Supreme Court's decision in Savage v. State[23] indicates that a government official's personal immunity cannot transfer to the State. Janaszak reads Savage too broadly. In Savage, the court expressly cautioned against the application of an immunity decision in one context to another without an analysis of the policies implicated in each context.[24] An analysis of the circumstances in which the immunities provided by RCW 18.130.300 and RCW 18.32.0357 operate demonstrates that these immunities should extend to the State and the Department.

With the UDA, the legislature intended to provide "a uniform disciplinary act with standardized procedures for the licensure of health care professionals and the enforcement of laws the purpose of which is to assure the public of the adequacy of professional competence and conduct in the healing arts."[25] The legislature authorized the secretary to employ investigative, administrative, and clerical staff to enforce the act.[26] It granted the Commission enforcement authority under the UDA for dental licensees. In this context, the legislature provided absolute immunity for the secretary of health, members of the commissions, and individuals acting on their behalf for official acts performed by any of these individuals in the course of their duties under the act.[27] In the

---

[23] 127 Wn.2d 434, 899 P.2d 1270 (1995).
[24] Savage, 127 Wn.2d at 442.
[25] RCW 18.130.010.
[26] RCW 18.130.060(1).
[27] RCW 18.130.300.

performance of these duties, the immunized individuals perform duties analogous to those of prosecutors and judicial officers. Therefore, those cases addressing the extension of prosecutorial and judicial immunity provide guidance.

The common law, as a matter of public policy, accords prosecuting attorneys absolute immunity for acts done in their official capacity.[28] This immunity is not provided to protect the individual official "but for the protection of the public and to insure active and independent action of the officers charged with the prosecution of crime, for the protection of life and property."[29] The Washington Supreme Court has concluded that this same public policy requires that this immunity be extended to the State and the entity employing the prosecutor.[30]

Similarly, the common law also accords judges absolute immunity for acts performed within their judicial capacity.[31] As with prosecuting attorneys, this immunity does not exist for the benefit of the individual judge "but exists to protect the administration of justice by ensuring that judges can decide cases without fear of personal lawsuits."[32] The Washington Supreme Court has

---

[28] Creelman v. Svenning, 67 Wn.2d 882, 884-85, 410 P.2d 606 (1966).
[29] Creelman, 67 Wn.2d at 884 (quoting Anderson v. Manley, 181 Wash. 327, 331, 43 P.2d 39 (1935)).
[30] Creelman, 67 Wn.2d at 885.
[31] Lallas, 167 Wn.2d at 864.
[32] Lallas, 167 Wn.2d at 864.

concluded that the absolute immunity of quasi-judicial officers extends to governmental entities vicariously liable for the individual officers' acts.[33]

The same policy considerations that control the extension of absolute immunity to governmental entities for the official acts of their prosecutors and judges are present in this case. Analogous to the immunity afforded prosecutors and judges, the immunity afforded by RCW 18.130.300 exists not to protect individuals but to protect the integrity of a uniform disciplinary process for health care professionals. It guarantees the independence of these individuals and allows them to protect the adequacy of professional competence and conduct without fear of suit. Therefore, we hold that the absolute immunity of RCW 18.130.300 extends to the State and the Department.

<u>Respondents Are Immune from Suit under 42 U.S.C. § 1983</u>

Janaszak contends the trial court erred by dismissing his claim for damages under 42 U.S.C. § 1983. Section 1983 provides the primary means for private enforcement of civil rights in the United States; Congress enacted this statute "to provide protection to those persons wronged by the 'misuse of power.'"[34] Specifically, it provides,

---

[33] <u>Lutheran Day Care v. Snohomish County</u>, 119 Wn.2d 91, 127, 829 P.2d 746 (1992).

[34] <u>Owen v. City of Independence</u>, 445 U.S. 622, 650, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) (internal quotation marks omitted (quoting <u>Monroe v. Pape</u>, 365 U.S. 167, 184, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961), <u>overruled on other grounds by</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The statute authorizes a civil action for the deprivation of federal constitutional rights.

Janaszak alleges that the respondents deprived him of his constitutionally protected interest in his dental license by conducting a biased investigation and intentionally skewing the facts presented to the Commission in support of a request to restrict his license during the pendency of disciplinary proceedings. The State and the Department contend that they are not subject to § 1983 claims. The individual respondents claim qualified immunity protects them. They also assert that Janaszak has failed to create a genuine issue of material fact on necessary elements of his claim. We agree with respondents.

Because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983,"[35] neither the State nor the Department can be held liable for violations of 42 U.S.C. § 1983.[36] This leaves for our consideration Janaszak's § 1983 claims against individual respondents.

---

[35] Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[36] Smith v. State, 135 Wn. App. 259, 270, 144 P.3d 331 (2006) (citing Hafer v. Melo, 502 U.S. 21, 31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)).

A plaintiff must establish two essential elements in a § 1983 action: (1) that some person deprived him or her of a federal constitutional or statutory right and (2) that person must have acted under color of state law.[37] A claim of qualified immunity to a § 1983 action presents two issues: (1) do the facts make out a violation of a constitutional right and (2) was the right at issue "clearly established" at the time of the defendant's alleged misconduct.[38] Qualified immunity applies unless the defendant's conduct violated a clearly established right.[39] Both issues present "'essentially legal question[s]'" for the court to decide.[40] The court may decide them in "the order of decisionmaking that will best facilitate the fair and efficient disposition of each case."[41]

Janaszak clearly has a protected property interest in his license to practice dentistry.[42] The State must afford him procedural due process in any proceeding to deprive him of this property interest.[43] Due process requires notice and an

---

[37] Sintra, Inc. v. City of Seattle, 119 Wn.2d 1, 11, 829 P.2d 765 (1992).
[38] Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009).
[39] Pearson, 555 U.S. at 232.
[40] Jones v. State, 170 Wn.2d 338, 349, 242 P.3d 825 (2010) (alteration in original) (quoting Mitchell, 472 U.S. at 526).
[41] Pearson, 555 U.S. at 242.
[42] Bang D. Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n, 144 Wn.2d 516, 522, 29 P.3d 689 (2001) (recognizing medical practice licenses as a legitimate private property interest).
[43] Bang D. Nguyen, 144 Wn.2d at 522-23.

opportunity to be heard "'at a meaningful time and in a meaningful manner.'"[44] If justified by an emergency, this notice and hearing may occur after a summary action.[45] But the emergency cannot be fabricated.[46] Thus, Janaszak can establish a § 1983 claim by proving an investigator wrongfully fabricated an emergency and knew or reasonably should have known that this fabrication would cause the Commission to find an emergency and summarily restrict Janaszak's dental license without a predeprivation hearing.[47]

Janaszak contends Miller-Smith caused the deprivation of his procedural due process rights with a biased investigation and "intentional skewing of the known facts" that led a summary restriction of his dental license. Specifically, he complains that Miller-Smith drafted two patient "complaints for them so as to create an emergency and arbitrarily compiled only a portion of the evidence she discovered during her investigation" and presented this to the Commission. He also complains that Miller-Smith provided the Commission with summaries of the statements she took from Janaszak, his office manager, and his dental assistant rather than copies of the actual statements, thereby undermining their importance. He asserts that the later withdrawal of his license restriction and the

---

[44] Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 216, 143 P.3d 571 (2006) (internal quotation marks omitted) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).
[45] Jones, 170 Wn.2d at 351.
[46] Jones, 170 Wn.2d at 351.
[47] Jones, 170 Wn.2d at 352.

dismissal of charges against him establish that Miller-Smith's alleged misconduct caused a wrongful restriction of his dental license. Again, we disagree.

Janaszak does not identify any misstatement of fact or omission of any material information in any complaint drafted by Miller-Smith. He does not explain how these complaints fabricated an emergency. Janaszak does not identify any misstatement of fact or omission in Miller-Smith's summary of the statements she took. Janaszak does not identify any evidence available to Miller-Smith material to the charges against him that the Department did not present to the Commission when it sought emergency relief. The Department based its charges on former patients' claims that Janaszak had sex with these individuals while they were his patients. Janaszak admitted having sex with them but denied the individuals were his patients at the time. Janaszak has not identified any evidence about the status of these individuals as patients that the Department withheld or "skewed." Janaszak does not identify any witness Miller-Smith failed to interview in her investigation, any material evidence she failed to discover, or any evidence she fabricated. In summary, Janaszak failed to create any material issue of fact about the alleged fabrication of an emergency.

Additionally, Janaszak's argument that the subsequent dismissal of charges demonstrates Miller-Smith improperly influenced the summary emergency action of the Commission ignores the only evidence in the record

explaining why the Department withdrew the charges.  The assistant attorney general who handled the disciplinary action against Janaszak stated the reason for the withdrawal in her declaration.  After Janaszak took partial depositions of the complainants, two did not want to schedule completion of their depositions, follow through with necessary discovery, or attend the disciplinary hearing.  The charges were withdrawn due to this inability to proceed, not because evidence became known to the Commission after its summary action that caused it to reach a different conclusion about the merits of the charges.

Because Janaszak failed to show a violation of a federal constitutional right, we affirm the trial court's dismissal of his § 1983 claims against the individual respondents.

Janaszak's State Constitutional Claims Fail

In his complaint, Janaszak asserted claims for violations of article I, sections 3, 5, and 7 of the Washington Constitution.  On appeal, Janaszak argues that the trial court improperly dismissed these constitutional claims because he requested injunctive relief in addition to damages.  Washington courts have consistently refused to recognize a cause of action in tort for violations of the state constitution.[48]  Because Janaszak failed to create any

---

[48] Blinka v. Wash. State Bar Ass'n, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001).

genuine issue of material fact about his entitlement to injunctive relief, the trial court properly dismissed his state constitutional claims.

<u>Janaszak Did Not Present Any Issue of Material Fact Relating to His Tort Claims</u>

Finally, Janaszak asserted common law claims for defamation, intentional interference with business expectancy, negligent investigation, common law negligence, outrage, and negligent infliction of emotional distress.  We address each claim individually.

        1.      <u>Defamation</u>

Janaszak alleges that a press release posted on the Department's web site defamed him with its headline, "Kitsap County dentists [sic] license restricted after having sex with patients."  Relying upon <u>Liberty Bank of Seattle, Inc. v. Henderson</u>,[49] the Department claims absolute immunity from this claim.  Citing <u>Bender v. Seattle</u>,[50] Janaszak contends the immunity is qualified rather than absolute.  We need not decide this issue because even if the privilege is only qualified, to defeat a motion for summary judgment Janaszak must present specific facts creating a genuine issue of material fact on the  question of whether the Department's statement was made after a fair and impartial investigation or upon reasonable grounds.[51]  He has not done so.

---

[49] 75 Wn. App. 546, 562, 878 P.2d 1259 (1994).
[50] 99 Wn. 2d 582, 600, 664 P.2d 492 (1983).
[51] <u>Turngren v. King County</u>, 104 Wn.2d 293, 310, 705 P.2d 258 (1985).

### 2. Negligent Investigation and Common Law Negligence

Janaszak maintains that the respondents can be held liable for negligent investigation because the UDA creates a statutory duty to investigate complaints against health care providers. In general, Washington common law does not recognize a claim for negligent investigation because of the potential chilling effect such claims would have on investigations.[52] We have refused to recognize a cognizable claim for negligent investigation against law enforcement officials and other investigators.[53]

Janaszak argues that Lesley v. Department of Social & Health Services[54] and Corbally v. Kennewick School District[55] create such a cause of action. We disagree. The Lesley court narrowly limited its holding to create a negligent investigation claim only against the Department of Social and Health Services (DSHS) caseworkers investigating child abuse pursuant to their specific statutory duty to investigate.[56] In Corbally, as here, the plaintiff attempted to extend

---

[52] Ducote v. Dep't of Soc. & Health Servs., 167 Wn.2d 697, 702, 222 P.3d 785 (2009).

[53] Dever v. Fowler, 63 Wn. App. 35, 44-45, 816 P.2d 1237 (1991); Fondren v. Klickitat County, 79 Wn. App. 850, 862-63, 905 P.2d 928 (1995); Donaldson v. City of Seattle, 65 Wn. App. 661, 671, 831 P.2d 1098 (1992).

[54] 83 Wn. App. 263, 273, 921 P.2d 1066 (1996).

[55] 94 Wn. App. 736, 740, 973 P.2d 1074 (1999).

[56] RCW 26.44.050 provides that "[u]pon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the protective services section with a report . . . and where necessary to refer such report to the court." (Emphasis added.)

Lesley, arguing that a negligent investigation claim should be permitted any time a statutory duty to investigate exists.[57] Janaszak mischaracterizes Corbally's holding to say that the court recognized an exception for all cases where an agency has a statutory duty to investigate. It does not. While Lesley carved out an exception for DSHS caseworkers, Corbally expressly refused to extend that exception any further. Our courts have created no further exceptions to the general rule that we do not recognize claims for negligent investigation. We decline to do so here.

Further, even if we were to recognize that the statutory duty to investigate under RCW 18.130.080 creates a cognizable claim for negligent investigation, the respondents in this case are still immune from such a suit. Because Miller-Smith's investigation and the Commission's summary suspension occurred purely within the context of a UDA adjudicative proceeding, the parties are entitled to statutory immunity under RCW 18.130.300.

The parties also are entitled to statutory immunity under RCW 18.130.300 against Janaszak's common law negligence claims.

3.    Outrage and Negligent Infliction of Emotional Distress

Janaszak contends that he made a prima facie showing of each element necessary to his claim for outrage. Again, we disagree. "One who by extreme

---

[57] Corbally, 94 Wn. App. at 740.

and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."[58]   To establish a claim for the tort of outrage, Janaszak must demonstrate that (1) he suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, and not negligently; (3) the conduct complained of was outrageous and extreme; and (4) he personally was the object of the outrageous conduct.[59]   The defendant's conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[60]

Janaszak argues that the Commission acted outrageously by conducting a biased investigation, selectively gathering evidence to build a case against him, and branding him a pedophile by limiting his practice to exclude all females "over 12 years old."  While Janaszak may have been distressed by the Commission's actions, he presents no evidence that the Commission or the investigator acted intentionally or recklessly to injure him.  As a matter of law, Janaszak failed to present a prima facie case of outrage.

---

[58] Lewis v. Bell, 45 Wn. App. 192, 194, 724 P.2d 425 (1986).
[59] Chambers-Castanes v. King County, 100 Wn.2d 275, 288, 669 P.2d 451 (1983).
[60] Reid v. Pierce County, 136 Wn.2d 195, 202, 961 P.2d 333 (1998) (emphasis omitted) (internal quotation marks omitted) (quoting Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)).

4.    Interference with Business Expectancy

Finally, Janaszak contends that respondents' summary restriction of his dental license constitutes intentional interference with business expectancy. Janaszak maintained contracts with three dental insurance providers that together provided approximately 90 percent of Janaszak's dental claims payments.  He claims the posting of notice of his license restrictions on the Department's web site caused these insurers to refuse to honor their contracts. He also argues that the restriction improperly interfered with his expectancy to treat female patients between the ages of 12 and 17.

To prove tortious interference, the plaintiff must produce evidence sufficient to support all of the following elements:  (1) the existence of a valid contractual relationship or business expectancy, (2) the defendant's knowledge of and intentional interference with that relationship or expectancy, (3) a breach or termination of that relationship or expectancy induced or caused by the interference, (4) an improper purpose or the use of improper means by the defendant that caused the interference, and (5) resultant damage.[61]  A complete failure of proof concerning any element necessarily renders all other facts immaterial.[62]  Because Janaszak fails to demonstrate that the Commission acted with an improper purpose or by improper means, his claim fails.

---

[61] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

[62] Boyce v. West, 71 Wn. App. 657, 665, 862 P.2d 592 (1993).

CONCLUSION

Respondents are immune from Janaszak's claims under the UDA and federal civil rights law. Janaszak fails to show any issue of material fact relating to his tort claims or his request for injunctive relief under the Washington Constitution. We affirm.

_Leach, C.J._

WE CONCUR: